## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

CARLA GRAVES,

        Plaintiff,

vs.

CITY OF DURANT and
GREG LAFOND, Individually,

        Defendants.

------------------------------------------------

CITY OF DURANT,

        Counter Plaintiff,

vs.

CARLA GRAVES,

        Counter Defendant.

No. C09-0061

**RULING ON MOTIONS FOR
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.     *INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *PROCEDURAL BACKGROUND*. . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   *RELEVANT FACTS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      *A.    The Parties*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      *B.    Graves' Pay Increases*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      *C.    Graves' Allegations of Sexual Harassment*. . . . . . . . . . . . . . . 7
           *1.    Mayor Richard Harmsen*. . . . . . . . . . . . . . . . . . . . . . 7
           *2.    City Administrator Greg LaFond*. . . . . . . . . . . . . . . . 7
      *D.    Graves' Medical Issues*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.   *LEGAL STANDARD FOR SUMMARY JUDGMENT*. . . . . . . . . . . . . . 8

V.    *DISCUSSION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A.    *Title VII and Iowa Code Chapter 216.* . . . . . . . . . . . . . . . . . . 10

B.    *Surviving Summary Judgment in a Title VII Discrimination
       Claim.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

C.    *Sex Discrimination.* . . . . . . . . . . . . . . . . . . . . . . . . . . 12
       1.    *Graves' Prima Facie Case.* . . . . . . . . . . . . . . . . . . 12
       2.    *The City's Legitimate Non-Discriminatory Reason.*. . . . . . . 14
       3.    *Pretext.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

D.    *Sexual Harassment/Hostile Work Environment.* . . . . . . . . . . . . 15

E.    *Retaliation.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

F.    *Aiding and Abetting.* . . . . . . . . . . . . . . . . . . . . . . . . . 23

G.    *Intentional Infliction of Emotional Distress.* . . . . . . . . . . . . . . 24

H.    *Libel and Slander.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
       1.    *Preemption.* . . . . . . . . . . . . . . . . . . . . . . . . . 29
       2.    *Truth as a Defense.* . . . . . . . . . . . . . . . . . . . . . 29
       3.    *Qualified Privilege.* . . . . . . . . . . . . . . . . . . . . . 30

VI.    *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

VII.    *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 19) filed by Defendant City of Durant on September 28, 2009, and the Motion for Summary Judgment (docket number 28) filed by Defendant Greg LaFond on January 11, 2010. Pursuant to Local Rule 7.c, the Motions for Summary Judgment will be decided without oral argument.

## II. PROCEDURAL BACKGROUND

Plaintiff Carla Graves ("Graves") timely filed charges of sex discrimination, sexual harassment, and retaliation against Defendants City of Durant ("the City") and Greg LaFond ("LaFond") with the Iowa Civil Rights Commission ("ICRC"). The charges were also filed with the Equal Employment Opportunity Commission ("EEOC"). On January 13, 2009, the ICRC issued an Administrative Release (right-to-sue letter) to Graves with

respect to her charges of sex discrimination, sexual harassment, and retaliation. On February 2, 2009, the EEOC also issued Graves a Notice of Right to Sue.

On April 13, 2009, in the Iowa District Court for Cedar County, Graves filed a Petition at Law and Jury Demand alleging sex discrimination, sexual harassment, and retaliation against the City in violation of the Iowa Civil Rights Act ("ICRA"), Iowa Code Chapter 216 (Count II);[1] sex discrimination, sexual harassment, and retaliation against the City in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count III);[2] aiding and abetting sex discrimination and sexual harassment against LaFond in violation of the ICRA, Iowa Code Chapter 216 (Count IV); intentional affliction [sic] of emotional distress against LaFond (Count V); slander against LaFond (Count VI); and libel against LaFond (Count VII).

The City initially filed an answer and counterclaim in Cedar County. On May 5, 2009, Defendants filed a Joint Notice of Removal (docket number 2), and the action was removed to the United States District Court for the Northern District of Iowa. On May 6, 2009, the City filed an Answer and Counterclaim (docket number 8), generally denying the material allegations contained in the Petition, asserting certain affirmative defenses, and alleging several counts in its counterclaim. LaFond filed an Answer (docket number 5) on May 13, 2009. On May 15, 2009, Graves filed an Answer (docket number 7) to the

---

[1] Graves' Petition lacks a "Count I" and begins with Count II.

[2] The Court notes that in its Brief in Support of Motion for Summary Judgment (docket number 19-1), the City seeks summary judgment on Graves' allegations of wrongful discharge and disparate treatment included in Counts II and III of her petition. Apparently, the City was unsure whether Graves intended these allegations to be separate theories of action against the City. In her Brief in Support of Resistance to Defendant City of Durant's Motion for Summary Judgment (docket number 27-1), Graves states that her "claims of disparate treatment and wrongful discharge are not claims separate and apart from he [sic] claims of sexual harassment and discrimination." *See* docket number 27-1 at 20. As such, the Court will not further address this issue in its decision, and will focus on the claims of sex discrimination, sexual harassment/hostile work environment, and retaliation.

City's counterclaim. On June 3, 2009, the City filed an Amended Answer and Counterclaim (docket number 12).

On August 31, 2009, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. The Order established certain pretrial deadlines and a trial ready date. Pursuant to the consent of the parties, the case was referred to the undersigned Magistrate Judge for final disposition, in accordance with 28 U.S.C. § 636(c). Trial is scheduled for December 6, 2010.

The City filed its instant Motion for Summary Judgment (docket number 19) on September 28, 2009. The City asks the Court to summarily dismiss Count's II and III of Graves' Petition. After two extensions, Graves filed her Resistance (docket number 27) on January 6, 2010. The City filed its Reply (docket number 29) on January 12, 2010. On January 11, 2010, LaFond filed his instant Motion for Summary Judgment (docket number 28), and joined the City's motion. LaFond seeks summary dismissal of Counts IV through VII of Graves' Petition. Graves filed her Resistance (docket number 30) to LaFond's motion on February 2, 2010.

## III. RELEVANT FACTS

### A. The Parties

Plaintiff Carla Graves was hired as the City Clerk for Defendant City of Durant on July 29, 1999. She continued in that position until she was terminated on May 6, 2008. Defendant Greg LaFond was the City Administrator at the time of Graves' termination.

### B. Graves' Pay Increases

When Graves was hired in 1999, she was told by Dan Guhin, the City Administrator at that time, that she was expected to obtain her Municipal City Clerk Certificate. Graves had five years to complete her certification and would receive a 5% raise every year that she was obtaining her certification, in addition to any regular raises she was entitled to receive. She started working toward her certification in 2000. Graves did not receive a 5% pay increase in 2000. In 2001, she continued to work toward her

certification. In November 2001, Graves received a 10% pay increase, two 5% increases for the years 2000 and 2001, for working toward her certification. According to Graves, her 2001 pay increase was authorized by the City Administrator at that time, Jerry Tutskey ("Tutskey").[3] On August 20, 2002, Graves earned her Certified Municipal Clerk Certificate. Tutskey authorized another 5% pay increase for Graves' completion of her certification.[4]

In August 2007, LaFond replaced Tutskey as City Administrator. In November 2007, LaFond was asked by the City Council to prepare a Position Classification and Compensation Plan. LaFond asked Graves to gather payroll information, such as job titles, job descriptions, and hourly wages for all City employees. In reviewing the payroll information, LaFond noticed that Graves received pay increases at times other than the beginning of the fiscal year in 2001 and 2002. LaFond also noted that other employees did not receive any pay increases at these times.

LaFond questioned Graves regarding her pay increases. According to LaFond, Graves told him that she was entitled to the raises pursuant to a pay incentive program for achieving certifications adopted in Resolution 1996-55.[5] According to Graves, however, her pay increases were authorized in an employee handbook which was not disseminated

---

[3] *See* Graves' Appendix (docket number 27-4) at 105; ¶ 21 of Graves' Affidavit.

[4] *Id.*; ¶ 22 of Graves' Affidavit.

[5] Resolution 1996-55 set the City Clerk's wages as 85% of her base pay in year one, 90% of her base pay in year two, 95% of her base pay in year three, 100% of her base pay in year four, and 105% of her base pay in year five or when the City Clerk attained certification. *See* Graves' Appendix (docket number 27-4) at 11. According to the City, Resolution 1996-55 was never followed and pay increases were set by the City Council. *See* City of Durant's Brief in Support of Motion for Summary Judgment (docket number 19-1) at 6. Moreover, on September 26, 2000, the City adopted Ordinance A-4A which established that the salaries of municipal officers, such as the City Clerk, would be set by the City Council, either by resolution or contract. *See* City of Durant's Appendix (docket number 19-6) at 48-49.

to employees, but was used and referred to by former City Administrator Tutskey.[6] Graves also stated that former City Administrator Jerry Tutskey authorized the pay increases. Lastly, Graves told LaFond that her pay increases were approved by the State Auditor.[7]

On April 8, 2008, LaFond alerted the City Council to his belief that Graves took unauthorized raises in 2001 and 2002. On April 9, 2008, Graves was placed on paid suspension. On May 21, 2008, Graves was terminated from employment in writing. Graves' termination letter provided in pertinent part:

> In the time that I have been City Administrator, you have been insubordinate to me and have shown disrespect not only to me but to coworkers. I have on several occasions counseled you, reprimanded you and disciplined you for various transgressions, with no positive changes in your behavior. Your conduct has created dissatisfaction within the City, and your continued employment would only serve to undermine my authority and ability to lead the City of Durant. I have lost confidence in your ability to do the job. While I regret having to take this action, it is my belief that this action is in the best

---

[6] *See* Graves' Appendix (docket number 27-4) at 105; ¶¶ 6-11 of Graves' Affidavit.

[7] In the State Auditor's Report on Special Investigation of the City of Durant for the period July 1, 2000 through May 6, 2008, the report provides:

> Based on a review of the fiscal year 2002 financial audit, we determined Ms. Graves had used an hourly rate higher than approved by the City Council to calculate her payroll. At that time, we asked the former City Administrator and Ms. Graves about the hourly rate used and were told the City Administrator had authorized an administrative pay increase. This was contrary to the ordinance adopted by the City Council on September 26, 2000. The ordinance stated 'compensation of all other officers other than the Mayor and Council and employees shall be set by the Council on contract or resolution.' However, we were not provided this information during the fiscal year 2002 audit.

*See* City of Durant's Appendix (docket number 19-7) at 123.

interests of the City of Durant. Pursuant to City Code, I have sought and obtained the approval of the City Council in authorizing your termination.

See City of Durant's Appendix (docket number 19-7) at 104.

### C. Graves' Allegations of Sexual Harassment

#### 1. Mayor Richard Harmsen

In November 2005, Richard Harmsen ("Harmsen") was elected mayor for the City of Durant for the 2006-2007 term. Graves claims that Harmsen created a hostile work environment by treating her with disrespect, screaming and yelling at her, and calling her "just a secretary." Graves further claims that Harmsen interfered and hindered her job performance by refusing to sign City Council meeting minutes and payroll checks. Graves also alleges that Harmsen stalked her. Specifically, Harmsen allegedly followed Graves to and from work, sat outside her gym while she worked out over her lunch hour, followed her to her children's daycare on many mornings, and would drive by City Hall approximately six times per day. Graves stated that she found Harmsen's conduct "to be very threatening and scary. I feared for my safety."[8] Graves reported her concerns to Tutskey, City Council member Dawn Smith, and the City Attorney. It is unclear from the record whether any action was taken against Harmsen.

#### 2. City Administrator Greg LaFond

Graves claims that on his first day as City Administrator, LaFond began creating a sexually hostile work environment by intimidating and threatening her. Specifically, Graves claims that LaFond told her that he had fired females in the past who crossed him, and he would do it again. According to Graves, LaFond treated her differently than male employees. Specifically, while LaFond publically reprimanded both her and male employees, the male employees did not receive discipline like she did. Graves also claims that personal issues with male employees were handled privately and confidentially, but

---

[8] See Graves' Appendix (docket number 27-4) at 106; ¶¶ 24-27 of Graves' Affidavit.

7

she was verbally abused, harassed, and reprimanded in front of other employees and the City Council. Graves further claims that she received disfavorable treatment from LaFond because she did not "accept being leaned into, touched or hugged . . . and I made known that I did not like his personal comments about my appearance for the day or his opinion of the perfume I was wearing."[9] Lastly, LaFond and other male employees and City Council members referred to Graves as "Queen Bee."

### D. Graves' Medical Issues

In 2007, Graves visited her physician due to uncontrollable shaking. She was referred to a neurologist who determined that her shaking was the result of stress and anxiety. She was prescribed anti-anxiety medication and began seeing a psychologist. Graves "attribute[s] the shaking, stress and anxiety to have been caused by the hostile work environment that [she] suffered while employed with the City of Durant."[10]

Other facts that are significant for making a determination on the City's Motion for Summary Judgment and LaFond's Motion for Summary Judgment will be discussed, as necessary, in the Court's consideration of the legal issues presented.

### IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Rakes v. Life Investors Insurance Co. of America*, 582 F.3d 886, 893 (8th Cir. 2009) ("Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law."). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court

---

[9] *See* Graves' Appendix (docket number 27-4) at 107; ¶ 32 of Graves' Affidavit.

[10] *Id.* at 109; ¶ 40 of Graves' Affidavit.

must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Roeben v. BG Excelsior Ltd. Partnership*, 545 F.3d 639, 642 (8th Cir. 2008) ("To survive summary judgment, a plaintiff must substantiate his [or her] allegations with enough probative evidence to support a finding in his [or her] favor."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

Furthermore, "summary judgment is disfavored in employment discrimination cases" because such cases are "inherently fact-based." *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005); *see also Mayer v. Nextel West Corp.*, 318 F.3d 803, 806 (8th Cir. 2003) ("'[S]ummary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based.'") (quoting *Keathley v.*

*Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999))). In an employment discrimination case, summary judgment should only be granted "if the evidence could not support any reasonable inference of discrimination." *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1055 (8th Cir. 2007); *see also Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) ("Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant.").

## V. DISCUSSION

### A. Title VII and Iowa Code Chapter 216

Title VII prohibits employers from discriminating against any individual based on sex with respect to compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a)(1). "'Discrimination based on sex that creates a hostile or abusive working environment violates Title VII.'" *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008) (quoting *Brenneman v. Famous Dave's of America, Inc.*, 507 F.3d 1139, 1143 (8th Cir. 2007)). It is also an unlawful employment practice "for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

Similarly, Iowa Code section 216.6(1)(a) makes it an unfair or discriminatory practice for any person "to discharge any employee, or to otherwise discriminate in employment against . . . any employee because of the . . . sex . . . of such . . . employee[.]" *Id.* It is also unfair or discriminatory for any person to "retaliate against another person in any of the rights protected against discrimination by this chapter because such person has lawfully opposed any practice forbidden under this chapter, . . . or has filed a complaint, testified, or assisted in any proceeding under this chapter." Iowa Code § 216.11(2).

Graves' claims for sex discrimination, sexual harassment, and retaliation, whether brought under Title VII or the ICRA, are analyzed under the same framework. *See Vivian*

10

*v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999) ("The ICRA was modeled after Title VII of the United States Civil Rights Act. Iowa courts therefore traditionally turn to federal law for guidance in evaluating the ICRA."); *see also Montgomery v. John Deere & Co.*, 169 F.3d 556, 558 n.3 (8th Cir. 1999) ("[D]iscrimination claims alleged under the Iowa Civil Rights Act are analyzed in the same manner as their federal law counterparts."); *Board of Supervisors of Buchanan County v. Iowa Civil Rights Commission*, 584 N.W.2d 252, 256 (Iowa 1998) ("In deciding gender discrimination disputes, we adhere to the Title VII analytical framework[.]"). Although the Iowa Supreme Court has indicated that it will entertain arguments that the ICRA can be interpreted differently than Title VII, neither party asks the Court to do so here. *See McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005) (declining to interpret the ICRA differently than Title VII where neither party argues for a different interpretation, but indicating that, although Iowa courts traditionally look to federal law for guidance in interpreting the ICRA, they are not bound by federal law in interpreting the ICRA). Because neither party argues that the ICRA should be interpreted differently than Title VII, the Court will analyze both Plaintiff's Title VII and ICRA sex discrimination, sexual harassment, and retaliation claims using federal law.

### B. *Surviving Summary Judgment in a Title VII Discrimination Claim*

There are two ways for an employee to survive summary judgment in a Title VII discrimination claim. *McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855, 860 (8th Cir. 2009) (citation omitted). The first method for surviving summary judgment requires the employee to present direct evidence of discrimination. *Id*. If direct evidence is unavailable to the employee, then he or she may employ the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish an inference of unlawful discrimination. *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 907 (8th Cir. 2006) (citation omitted). Because Graves presents no direct evidence of discrimination, the Court applies the analytical framework set forth in

*McDonnell Douglas* to Grave's sex discrimination, sexual harassment, and retaliation claims.

Under the burden-shifting analysis of *McDonnell Douglas*:

> the plaintiff first must establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for discharging the employee. If the employer meets this burden, then the employee must show that the employer's proffered reason for firing him is a pretext for unlawful discrimination. At the summary judgment stage, . . . the issue is 'whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action.' If so, ' the presence of additional legitimate motives will not entitle the defendant to summary judgment.'

*McCullough*, 559 F.3d at 860-61 (quotations omitted).

### C. Sex Discrimination

### 1. Graves' Prima Facie Case

In order to establish a *prima facie* case of sex discrimination, Graves must show that: "'(1) she was a member of the protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of discrimination.'" *Lewis v. Heartland Inns of America, L.L.C.*, 591 F.3d 1033, 1038 (8th Cir. 2010) (quoting *Bearden v. International Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008)). In considering whether a plaintiff establishes a *prima facie* case of discrimination, the Court bears in mind that "[t]he required prima facie showing is a 'flexible evidentiary standard' that was 'never intended to be rigid, mechanized, or ritualistic.'" *Lewis*, 591 F.3d at 1039 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

The City concedes that Graves can establish the first two elements of her *prima facie* case of sex discrimination. The City contends, however, that Graves fails to establish the third and fourth elements of her *prima facie* case because she did not suffer a "gender-

based" adverse employment action and she was not "treated differently than any similarly situated male."[11]

The City's claim that Graves is unable to establish the third element of her *prima facie* case is wholly without merit. Graves is not required to show that she suffered a "gender-based" adverse employment action, she simply must show *an* adverse employment action. Termination from employment clearly satisfies the third element of her *prima facie* case.

Similarly, the City places too much emphasis on whether Graves was treated differently than similarly situated males in claiming that she is unable to establish the fourth element of her *prima facie* case. "Title VII has been interpreted to require only that, in addition to the first three elements of a prima facie case, the plaintiff demonstrate that his or her discharge occurred in 'circumstances which allow the court to infer unlawful discrimination.'" *Walker v. St. Anthony's Medical Center*, 881 F.2d 554, 558 (8th Cir. 1989) (quoting *Craik v. Minnesota State University Board*, 731 F.2d 465, 469 (8th Cir. 1984)); *see also Lewis*, 591 F.3d at 1040 ("The touchstone inquiry remains whether circumstances permit a reasonable inference of discrimination."); *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995) ("While [the] evidence [of discrimination] would not require a reasonable juror to return a verdict for the [plaintiff], it is sufficient to meet the fourth prongs minimal requirements of *some* evidence allowing for an inference of improper motivation."). Considering the record in the light most favorable to Graves, the Court finds that Graves' allegations – including LaFond's statement that he had fired females who crossed him in the past, being disciplined more severely than male employees, being called derogatory names, and receiving disfavorable treatment for objecting to sexually inappropriate behavior – are sufficient to permit a reasonable inference of sex discrimination for purposes of Graves' *prima facie* case. Accordingly,

---

[11] *See* City of Durant's Brief in Support of Motion for Summary Judgment (docket number 19-1) at 14.

the Court determines that Graves has established her *prima facie* case of sex discrimination.

### 2.    *The City's Legitimate Non-Discriminatory Reason*

Because Graves established a *prima facie* case of sex discrimination, the burden shifts to the City to articulate a legitimate non-discriminatory reason for terminating Graves. *See McCullough*, 559 F.3d at 860-61. The City states that it terminated Graves due to: (1) Unauthorized wages, (2) insubordination, (3) conflict with co-workers, and (4) improper removal of public documents. The Court finds that the City articulated legitimate non-discriminatory reasons for its decision to terminate Graves. Accordingly, the burden shifts back to Graves to present evidence that the City's proffered reasons were merely a pretext for sex discrimination. *See Id.*

### 3.    *Pretext*

Because the City articulated a legitimate non-discriminatory reason for its decision to terminate Graves, the burden shifts back to Graves to present evidence that the employer's reason was mere pretext for unlawful discrimination. *See Id.* In considering pretext at the summary judgment stage, "the issue is 'whether the plaintiff has sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action.'" *McCullough*, 559 F.3d at 860-61 (quoting *Roberts v. Park Nicollet Health Services*, 528 F.3d 1123, 1127 (8th Cir. 2008), in turn quoting *Griffith v. City of Des Moines*, 387 F.3d 735 (8th Cir. 2004)); *see also Lewis*, 591 F.3d at 1042 ("At [the summary judgment] stage of the case, the question is not whether [the plaintiff] will prevail on her claim but rather whether she has offered sufficient evidence from which a reasonable factfinder could find that she was discriminated against because of her sex.").

Having considered all of the evidence, and having viewed the record in the light most favorable to Graves, the Court concludes that Graves has presented sufficient evidence from which a reasonable factfinder could conclude that she was discriminated against based on her sex. *See Lewis*, 591 F.3d at 1042. In particular, LaFond's comment

that he had fired females who crossed him in the past, being disciplined more severely than male employees, being called derogatory names, and receiving disfavorable treatment for objecting to sexually inappropriate behavior is evidence from which a reasonable jury could determine that sex was a motivating factor in the City's employment decision. *See Roberts*, 528 F.3d at 1128. Taking all of this evidence together, the Court concludes that there is a genuine issue of material fact as to whether sex was a "motivating factor" in Graves' termination. *See McCullough*, 559 F.3d at 860-61; *see also Lewis*, 591 F.3d at 1042 ("At [the summary judgment] stage of the case, the question is not whether [the plaintiff] will prevail on he claim but rather whether she has offered sufficient evidence from which a reasonable factfinder could find that she was discriminated against because of her sex."). Therefore, the City's motion for summary judgment on Graves' federal and state sex discrimination claims should be denied.

### D. Sexual Harassment/Hostile Work Environment

In order to establish a prima facie case of sexual harassment and/or hostile work environment, Graves must show: "'(1) that she is a member of a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition or privilege of employment.'" *Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (quoting *Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1026 (8th Cir. 2004)).

Both parties agree that Graves can establish the first element of her *prima facie* case of sexual harassment/hostile work environment. The City argues, however, that Graves is unable to establish the second, third, and fourth elements of her *prima facie* case. In its brief, the City primarily addresses only the fourth element of the *prima facie* case. Similarly, Graves, in her resistance, also focuses primarily on the fourth element of the *prima facie* case. Considering the evidence in the light most favorable to Graves, the Court concludes that Graves is able to establish the second and third elements of her *prima*

*facie* case. Accordingly, the Court will focus its discussion on the fourth element of the *prima facie* case.

In order to meet her burden on the fourth element of the *prima facie* case, Graves "'must demonstrate the unwelcome harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment by creating an objectively hostile or abusive environment.'" *LeGrand v. Area Resources for Community and Human Services*, 394 F.3d 1098, 1101 (8th Cir. 2005) (quoting *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003)). "'Sexual harassment standards are demanding--to be actionable, conduct must be extreme and not merely rude or unpleasant.'" *Id.* (quoting *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003)).

The fourth element of the *prima facie* case also requires the work environment to be both objectively and subjectively offensive. *Sandoval v. American Bldg. Maintenance Industries, Inc.*, 578 F.3d 787, 801 (8th Cir. 2009) (citation omitted). "The harassment must be 'severe or pervasive enough to create an objectively hostile or abusive work environment' and the victim must subjectively believe her working conditions have been altered.'" *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993)); *see also Nitsche v. CEO of Osage Valley Electric Co-op.*, 446 F.3d 841, 845 (8th Cir. 2006) ("'Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (quotations omitted). "An objectively offensive environment is one that a reasonable person would find hostile or abusive[.]" *Anderson*, 579 F.3d at 862. A plaintiff must show that "'the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" *Sutherland v. Missouri Department of Corrections*, 580 F.3d 748, 751 (8th Cir. 2009) (quoting *Harris*, 510 U.S. at 21); *see also Nitsche*, 446 F.3d at 846 ("Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.'") (quotations omitted). Thus,

the plaintiff "must clear a high threshold to demonstrate actionable harm, for 'complaints attacking the ordinary tribulation of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing' obtain no remedy." *Id.* at 845-46 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

"'There is no bright line between sexual harassment and merely unpleasant conduct.'" *Sandoval*, 578 F.3d at 801 (quoting *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997)). Therefore, courts view the totality of the circumstances in determining whether a hostile work environment exists. *Id.* (citation omitted); *see also Sutherland*, 580 F.3d at 751 ("The totality of the circumstances is examined to determine if the environment was sufficiently hostile.") (citation omitted); *Anderson*, 579 F.3d at 862 (same). Factors to consider in making such a determination include: (1) The frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating; and (4) whether the conduct was so severe or pervasive that it unreasonably interfered with the employee's work performance. *Anderson*, 579 F.3d at 862 (citation omitted). The Court must also bear in mind that "'Title VII does not prohibit all verbal or physical harassment in the workplace and is not a general civility code for the American workplace.'" *Id.* at 862-63 (quoting *Hervey v. County of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008)).

The high threshold for demonstrating actionable harm under the fourth element of the *prima facie* case of sexual harassment/hostile work environment is illustrated by the decision of the Eighth Circuit Court of Appeals in *Duncan v. General Motors Corp.*, 300 F.3d 928 (8th Cir. 2002). In *Duncan*, the Eighth Circuit reversed a jury's award of damages on Duncan's, the plaintiff's, sexual harassment claim. *Id.* at 930. According to the facts, two weeks after Duncan was hired, her supervisor, Booth, propositioned her to have a relationship with him. *Id.* at 931. Duncan alleged that Booth's manner toward her became hostile after she declined his advance. *Id.* Duncan testified to numerous incidents of her supervisor's inappropriate behavior:

Booth directed Duncan to create a training document for him on his computer because it was the only computer with the necessary software. The screen saver that Booth had selected to use on his computer was a picture of a naked woman. Duncan testified to four or five occasions when Booth would unnecessarily touch her hand when she handed him the telephone. In addition, Booth had a planter in his office that was shaped like a slouched man wearing a sombrero. The planter had a hole in the front of the man's pants that allowed for a cactus to protrude. . . . Booth also kept a child's pacifier that was shaped like a penis in his office that he occasionally showed to his coworkers and specifically to Duncan on two occasions.

In 1995, Duncan requested a pay increase and told Booth that she would like to be considered for an illustrator's position. Booth said that she would have to prove her artistic ability by drawing his planter. . . .

Additionally in 1995, Booth . . . created a 'recruitment' poster that was posted on a bulletin board in the high-tech area. The poster portrayed Duncan as the president and CEO of the Man Hater's Club of America. . . .

On May 5, 1997, Booth asked Duncan to type a draft of the beliefs of the 'He-Men Women Hater's Club.' The beliefs included the following:

- Constitutional Amendment, the 19th, giving women the right to vote should be repealed. Real He-Men indulge in a lifestyle of cursing, using tools, handling guns, driving trucks, hunting, and of course, drinking beer. . . .
- Women are the cause of 99.9 per cent of stress in men.
- Sperm has a right to live.
- All great chiefs of the world are men.
- Prostitution should be legalized.

*Id.* at 931-32. The Eighth Circuit determined that Duncan's alleged harassment was not so severe or pervasive as to alter a term, condition, or privilege of her employment. *Id.*

at 934. Specifically, the Eighth Circuit found that the evidence presented at the trial showed that Duncan was upset and embarrassed by the posting of the derogatory poster, and was disturbed by Booth's advances and inappropriate behavior, but she failed to show that "these occurrences in the aggregate were so severe and extreme that a reasonable person would find that the terms and conditions of Duncan's employment had been altered." *Id.* The Eighth Circuit concluded that:

> Booth's actions were boorish, chauvinistic, and decidedly immature, but we cannot say they created an objectively hostile work environment permeated with sexual harassment. Construing the evidence in the light most favorable to Duncan, she presented evidence of four categories of harassing conduct based on her sex: a single request for a relationship which was not repeated when she rebuffed it, four or five isolated incidents of Booth briefly touching her hand, a request to draw a planter, and teasing in the form of a poster and beliefs for an imaginary club. It is apparent that these incidents made Duncan uncomfortable, but they do not meet the standard necessary for actionable sexual harassment.

*Id.* at 935.

Considering the record in the light most favorable to Graves, the Court concludes that Graves' allegations of Harmsen yelling at her, calling her "just a secretary," driving by City Hall repeatedly throughout the day, waiting outside her gym on approximately 10 occasions, and LaFond's comment that he had fired females who crossed him in the past, calling her "Queen Bee," and incidents of unwanted leaning, touching, or hugging, do not rise to the level of actionable hostile work environment sexual harassment as contemplated by *Duncan* and its progeny. *See Duncan*, 300 F.3d at 935; *see also Anderson*, 579 F.3d at 863 (finding a manager's conduct of rubbing the plaintiff's shoulders and back, calling her "baby doll," insinuating that she could go farther in the company if she got along with him, and accusing her of not wanting to be "one of my girls" to be not severe, pervasive, or demeaning enough to have altered a term, condition, or privilege of her employment); *Vajdl v. Mesabi Academy of KidsPeace, Inc.*, 484 F.3d

546, 551-52 (8th Cir. 2007) (finding that repeated comments about plaintiff's body by two co-workers, repeated requests for dates by two co-workers, and two incidents of touching (hair and pant leg) by a co-worker did not amount to severe or pervasive conduct which altered a term, condition, or privilege of plaintiff's employment); *LeGrand*, 394 F.3d 1098, 1100-03 (8th Cir. 2005) (finding that the unwelcome sexual advances of a priest serving on the board of a non-profit organization who employed the plaintiff, which consisted of the priest asking the plaintiff to watch pornographic movies with him and "jerk off" to relieve stress, suggesting a second time that watching pornographic movies with the him would advance the plaintiff's career in the non-profit organization, kissing the plaintiff, grabbing the plaintiff's buttocks, brushing the plaintiff's crotch area, and gripping the plaintiff's thigh under a table during a meeting at the non-profit organization were not so severe or pervasive as to "poison" the plaintiff's work environment); and *Ottman v. City of Independence*, 341 F.3d 751, 760 (8th Cir. 2003) (concluding the district court erred in finding a triable issue for the jury on the plaintiff's hostile work environment claim, where the harassing conduct consisted of belittling and sexist remarks on an almost daily basis). Accordingly, the Court finds that the City is entitled to summary judgment on Graves' sexual harassment/hostile work environment claim.

### E. Retaliation

In order to establish a prima facie case of retaliation, Graves must show: (1) she engaged in protected conduct, including opposition to an action prohibited by Title VII; (2) she was subjected to an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse action. *Lewis*, 591 F.3d at 1042 (citation omitted).

The City concedes that Graves can establish the first two elements of her *prima facie* case of retaliation. The City contends, however, that Graves fails to establish the third element of her *prima facie* case because the timing of her termination was not related to (1) the filing of her civil rights complaints, (2) her complaints about LaFond to the City

Council, or (3) the City Council's knowledge of Graves' alleged problems with LaFond. Thus, the City contends that there is no causal connection between Graves' complaints of discrimination and her termination.

"An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005) (citations omitted). Importantly, "[t]he ultimate question in any retaliation case is whether the employer's adverse action against the employee was motivated by retaliatory intent." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1119 (8th Cir. 2006); *see also Kipp v. Missouri Highway and Transportation Commission*, 280 F.3d 893, 897 (8th Cir. 2002) ("[W]hat is meant by 'causal link' . . . is a showing that an employer's 'retaliatory motive played a part in the adverse employment action.'") (quotation omitted).

In her resistance, Graves focuses her argument solely on her complaints about LaFond to the City and the City Council's knowledge of her alleged problems with LaFond. Specifically, Graves argues that:

> In this case, the harassment was reported to the former City Administrator, a Council Member and the City Attorney. When the discrimination and harassment continued, Mrs. Graves continued to complain to Council Member Smith. After Mrs. Smith complained of the discrimination and made clear that the harassment was unwelcome, it became worse and eventually led to her termination. It was Mrs. Graves' continued complains [*sic*] that triggered the City Administrator's accusations of embezzlement and fabricated instances of misconduct. This inference is made clear when one examines the fact that no other employee was treated this harshly for receiving the same type of raises as Mrs. Graves. Simply, Mrs. Graves was retaliated against by her supervisor for reporting his sexually harassing conduct.

*See* Graves' Brief in Support of Resistance to Defendant, City of Durant's, Motion for Summary Judgment (docket number 27-1) at 20.

While the record reflects that Graves complained about Harmsen's behavior in 2007 to former City Administrator Tutskey, Council Member Smith, and the City Attorney, there is no evidence in the record that she made any complaints regarding LaFond's alleged inappropriate behavior. Therefore, Graves' claim that she "was retaliated against by her supervisor for reporting his sexually harassing conduct" is entirely unsupported by the record. Furthermore, City of Durant Council Members Dean Maiers, Michael McKinley, Nik Seibel, and Charles Miller provided an affidavit in which they testify that they were "aware that Carla Graves alleged she had problems with City Administrator Greg LaFond more than one year before she was terminated. To my knowledge, these allegations had nothing to do with sexual harassment, sexual discrimination, disparate treatment, or any other similar claim."[12]

Moreover, even if the Court were to consider Graves' complaints about Harmsen or alleged complaints about LaFond, the record demonstrates that time between her complaints and her termination was over one year. The Eighth Circuit has held that an interval of two months is too long to create an inference of a causal connection between protected conduct and an adverse action. *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1149 (8th Cir. 2008); *see also Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003) (finding that a period of over two months is too long to create a causal connection); *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001) (finding that a period of seven months is too long to create a causal connection).

Therefore, having considered the entire record in the light most favorable to Graves, the Court finds that Graves has failed to establish the third element of her *prima facie* case. Graves is unable to establish a causal connection between any complaints she made to the City Council regarding sexual harassment and her termination, or establish that her termination was motivated by retaliatory intent. *See Wallace*, 442 F.3d at 1119.

---

[12] *See* City of Durant's Appendix (docket number 19-7) at 190; ¶ 1 of Affidavit of City Council Members.

Accordingly, the Court finds that the City is entitled to summary judgment on Graves' retaliation claim.

### F. Aiding and Abetting

Iowa Code section 216.11(1) provides that:

> It shall be an unfair or discriminatory practice for:
>
> 1. Any person to intentionally aid, abet, compel, or coerce another person to engage in any of the practices declared unfair or discriminatory by this chapter.

*Id.*

In order to establish a civil claim for aiding and abetting under Iowa law, Graves must prove: "1) a wrong to the primary party; 2) knowledge of the wrong on the part of the aider; and 3) substantial assistance by the aider in the achievement of the primary violation." *PFS Distribution Co. v. Raduechel*, 492 F. Supp. 2d 1061, 1084 (S.D. Iowa 2007) (citing *Ezzone v. Riccardi*, 525 N.W.2d 388, 398 (Iowa 1994), in turn citing *Tubbs v. United Central Bank, N.A.*, 451 N.W.2d 177, 182 (Iowa 1990)); *see also* Restatement (Second) of Torts § 876, at 315 (1979). In *Ezzone*, the Iowa Supreme Court relied on the Restatement and explained that "[u]nder the Restatement, a person becomes subject to liability for harm caused by the tortious conduct of another when that person: . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other in such conduct (aiding and abetting)." 525 N.W.2d at 398.

LaFond argues that he is entitled to summary judgment on Graves' aiding and abetting claim under Iowa Code section 216.11(1), because "there is no underlying wrongful act which LaFond could even arguably have aided and abetted."[13] In his brief, LaFond joins the arguments presented by the City and offers "additional argument to

---

[13] *See* LaFond's Brief in Support of Motion for Summary Judgment (docket number 28-1) at 14.

demonstrate further lack of underlying or primary wrong."[14]  Essentially, LaFond argues that because Graves is unable to sustain her claims for sex discrimination, sexual harassment/hostile work environment, and retaliation, she cannot sustain a claim for aiding and abetting. Thus, LaFond only addresses the first element of a claim for civil aiding and abetting.

In section *V.B.* of this decision, the Court determined that there is a genuine issue of material fact as to whether sex was a "motivating factor" in Graves' termination, precluding summary judgment on Graves' sex discrimination claim. The Court concluded that LaFond's comment that he had fired females who crossed him in the past, Graves being disciplined more severely than male employees by LaFond, Graves being called derogatory names by LaFond, and Graves receiving disfavorable treatment for objecting to sexually inappropriate behavior by LaFond is evidence from which a reasonable jury could determine that sex was a motivating factor in the City's employment decision. Therefore, the Court finds that there are genuine issues of material fact as to each element of Graves' claim for civil aiding and abetting, including whether LaFond knew his alleged actions were wrong, and whether he aided and abetted the City in discriminating against Graves based on her sex. *See PFS Distribution Co.*, 492 F. Supp. 2d at 1084.  Therefore, LaFond's motion for summary judgment on Graves' aiding and abetting claim should be denied.

### G. *Intentional Infliction of Emotional Distress*

LaFond argues that Graves' intentional infliction of emotional distress claim is preempted by the ICRA, and fails as a matter of law because her claim is based on her allegations of sex discrimination, sexual harassment, and retaliation. Contrary to LaFond's assertions, Graves argues that she is able to present substantial evidence separate from her sex discrimination and harassment claims to support a claim for intentional infliction of emotional distress. Specifically, Graves argues that:

---

[14] *Id.* at 5-6.

Immediately after Mrs. Graves was terminated, LaFond contacted media with his allegations that Mrs. Graves embezzled thousands of dollars from the City through unauthorized pay increases. This occurred prior to any investigation or opportunity on Mrs. Graves' part to present evidence on her behalf to refute the allegations. The separate and independent nature of this conduct is illustrated by the fact that Mrs. Graves has pled causes of action for slander and libel. Certainly LaFond's conduct in slandering Mrs. Graves' by providing false information to the media has nothing to do with her discrimination claim. Thus, in order to prove a claim of IIED [(intentional infliction of emotional distress)] based on this conduct, Mrs. Graves would not have to prove any type of sexually [*sic*] discrimination or harassment. Similarly, LaFond provided knowingly false and inaccurate information to the State Auditor's Office to influence the results of its special audit, and in turn lead Mrs. Graves' community to believe she stole from it. This outrageous conduct could be construed neutrally to be seen as a supervisor attempting to cover up the false information he had provided to the City Council which resulted in Mrs. Graves' termination. . . . Mrs. Graves' claim for IIED is not preempted by the ICRA or the Title VII because she would not have to present evidence of sexual harassment and discrimination to succeed on [*sic*] prevail on her claim of IIED.

*See* Carla Graves' Brief in Support of Resistance to Defendant Greg LaFond's Motion for Summary Judgment (docket number 31) at 12-13.

"To the extent the ICRA provides a remedy for a particular discriminatory practice, its procedure is exclusive and the claimant asserting that practice must pursue the remedy it affords." *Smidt v. Porter*, 695 N.W.2d 9, 17 (Iowa 2005); *see also Weems v. Federated Mutual Insurance Co.*, 220 F. Supp. 2d 979, 995 (N.D. Iowa 2002) ("The Iowa Supreme Court has repeatedly held that the remedies provided by the ICRA are exclusive and preemptive.") (citations omitted); *Channon v. United Parcel Service, Inc.*, 629 N.W.2d 835, 857 (Iowa 2001) (explaining that the ICRA "provides the exclusive remedy for particular conduct prohibited under that statute."). "'Preemption occurs unless the claims

are separate and independent, and therefore incidental, causes of action.'" *Channon*, 629 N.W.2d at 857 (quoting *Greenland v. Fairtron Corp.*, 500 N.W.2d 36, 38 (Iowa 1993)). Claims are not separate and independent if "under the facts of the case, success on the non-ICRA claims requires proof of discrimination[.]" *Channon*, 629 N.W.2d at 857. "'The test is whether, in light of the pleadings, discrimination is made an element of' the non-ICRA claims." *Id.*; *see also Napreljac v. John Q. Hammons Hotels, Inc.*, 461 F. Supp. 2d 981, 1038 (S.D. Iowa 2006) ("To decide whether a tort claim is preempted, the Court must examine whether 'in light of the pleadings, discrimination is made an element of' the tort claim.'") (quotation omitted). Therefore, the key to Graves' intentional infliction of emotional distress claim is her "characterization of her emotional distress claim as stated in her pleadings." *Channon*, 629 N.W.2d at 858.

Turning to Graves' petition, in her claim for intentional infliction of emotional distress, Graves alleges the following:

> 50. Defendant, Greg LaFond, intentionally inflicted emotional distress upon the Plaintiff, including but not limited to, the following:
>
> a. Greg LaFond fabricated reasons to terminate the Plaintiff because she was a woman and because she reported to Durant City Council that Greg LaFond discriminated against her and created a hostile work environment;
>
> b. Greg LaFond fabricated the fact that Plaintiff removed documents from City Hall and provided that as a reason to terminate Plaintiff;
>
> c. Greg LaFond fabricated a story in which he convinced Durant City Council that Plaintiff purposely changed access codes to City accounts, which was false;
>
> d. Greg LaFond fabricated a story that Plaintiff gave herself a raise, inconsistent with City policy, which was false;
>
> e. Greg LaFond made several comments around the office, calling Plaintiff "Queen Bee" and

comparing her to "Deputy Sweet Pants" from Greg LaFond's previous employment;

f. Greg LaFond retaliated against the Plaintiff because she reported that he added 40 hours to his vacation accrual. Thereafter, Greg LaFond attempted to have Plaintiff terminated;

g. After Greg LaFond convinced the Durant City Council to investigate Plaintiff for embezzlement, altering access codes to financial accounts, removing minutes and other City documents from City Hall without authority, he then spread rumors throughout the City of Durant to bolster his false claims, which rumors have caused the intentional infliction of emotional distress upon Plaintiff.

*See* Graves' Petition at Law and Jury Demand (docket number 3) at 8-9.

In ¶ 50.a. of her petition, Graves alleges that LaFond fabricated reasons to terminate her "because she was a woman and because she reported to Durant City Council that Greg LaFond discriminated against her and created a hostile work environment."[15] The remaining sections of ¶ 50, b.-g., set forth the actual alleged fabricated reasons for her termination. While some of the individual alleged fabricated reasons may not require discrimination as an element of her intentional infliction of emotional distress claim, the entire claim is premised on the allegation that LaFond fabricated reasons to terminate her "because she was a woman and because she reported to Durant City Council that Greg LaFond discriminated against her and created a hostile work environment."[16] In other words, Graves alleges, at least in part, that sex discrimination and sexual harassment caused her emotional distress. Therefore, discrimination is an element of her claim. When taken as a whole, the Court concludes that Graves' pleadings clearly establish that her intentional infliction of emotional distress claim is based on her allegations of

---

[15] *See* Graves' Petition at Law and Jury Demand (docket number 3) at 8; ¶ 50.a.

[16] *Id.*

discrimination. *See Channon*, 629 N.W.2d at 858. The ICRA therefore preempts her claim, and LaFond is entitled to summary judgment on her intentional infliction of emotional distress claim. *See id.* at 857-58.

## H. Libel and Slander

Defamation law in Iowa includes the twin torts of libel and slander. *Yates v. Iowa West Racing Association*, 721 N.W.2d 762, 768 (Iowa 2006) (citing *Schlegel v. The Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998)). "'Libel is generally a written publication of defamatory matter, and slander is generally an oral publication of such matter.'" *Id.* (quoting *Schlegel*, 585 N.W.2d at 221); *see also Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994) ("The gist of an action for libel or slander is the publication of written or oral statements which tend to injure a person's reputation and good name.").

In her petition, Graves alleges the following libelous actions by LaFond: (1) Creation of false documents to support LaFond's false claims against Graves; (2) reporting false written statements to the media regarding Graves' suspension; and (3) false statements by LaFond to the City Council against Graves which were made part of the written minutes of the City Council. *See* Graves' Petition at Law and Jury Demand (docket number 3) at 10; ¶ 56.a.-c. Graves also alleges the following slanderous actions by LaFond: (1) fabricating the fact that Graves removed documents from City Hall; (2) fabricating a story that Graves purposely changed access codes to City accounts; (3) fabricating a story that Graves gave herself a raise inconsistent with City policy; (4) calling Graves "Queen Bee" and "Deputy Sweet Pants" around the office; and (5) spreading false rumors around the City of Durant to bolster his false claims against Graves of embezzlement, altering access codes, and removing documents from the City. *See* Graves' Petition at Law and Jury Demand (docket number 3) at 9-10; ¶ 53.a.-e.

LaFond argues that he is entitled to summary judgment on Graves' libel and slander claims for three reasons. First, LaFond argues that Graves' defamation claims are

preempted by the ICRA. Second, LaFond argues his statements were true, which is an absolute defense to claims of libel and slander. Lastly, LaFond argues that he entitled to summary judgment because his statements were protected by "qualified privilege."

### 1.    *Preemption*

LaFond argues that he is entitled to summary judgment on Graves' libel and slander claims because they are preempted by the ICRA. The Court disagrees. Unlike her emotional distress claim, Graves' defamation claims are not wholly intertwined with her discrimination claims. Specifically, in her emotional distress claim, Graves alleged that LaFond intentionally inflicted emotional distress on her by fabricating reasons to terminate her because she is a woman and reported him to the City for discriminating against her and creating a sexually hostile work environment. *See* Graves' Petition at Law and Jury Demand (docket number 3) at 8; ¶ 50.a. Graves makes no such claim here. Instead, she alleges that LaFond's fabricated stories and spreading of rumors injured her reputation and good name. Graves success or failure on her libel and slander claims require no proof of discrimination. *See Channon*, 629 N.W.2d at 857 ("'The test is whether, in light of the pleadings, discrimination is made an element of' the non-ICRA claims.") (quotation omitted). Therefore, the Court determines that Graves' defamation claims are not preempted by the ICRA because they are separate and independent causes of action. *Id.*

### 2.    *Truth as a Defense*

One method in which a plaintiff may prevail on a defamation claim is to prove that the published statement was libelous per se or slanderous per se. *Lara*, 512 N.W.2d at 785 (slanderous per se); *Vinson v. Linn-Mar Community School District*, 360 N.W.2d 108, 115-16 (Iowa 1984) (libelous per se). Attacks on the integrity or moral character of a party are libelous per se and/or slanderous per se. *Id.* Having considered Graves' allegations in the light most favorable to her, the Court finds that there are genuine issues of material fact as to whether LaFond's alleged comments and actions are libelous per se

and/or slanderous per se, in that they attacked her integrity and moral character as an employee of the City of Durant. *Id.*

The truth of the statement, however, is an absolute defense to libel or slander. *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996) (citations omitted). LaFond argues that his statements were true. LaFond maintains that the conclusions of the State Auditor support his contention that his statements were true. Graves disputes LaFond's contention and argues that the fabrications LaFond presented to the City and other entities are the same fabrications which he presented to the State Auditor. Furthermore, Graves claims that there is evidence which supports her contention that her raises were authorized.[17] Having considered the entire record in the light most favorable to Graves, the Court finds that a genuine issue of material fact exists as to whether LaFond defeats Graves' defamation claims on the theory of truth as an absolute defense.

### 3. *Qualified Privilege*

Qualified privilege is an affirmative defense to claims of libel per se and/or slander per se. *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004). In *Theisen v. Covenant Medical Center, Inc.*, 636 N.W.2d 74 (Iowa 2001), the Iowa Supreme Court explained that the privilege applies to:

> communications made in good faith on any subject matter in which the person communicating has an interest, or with reference to which he has a duty . . . if made to another person having a corresponding interest or duty, on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Id.* at 83-84 (quoting 50 Am. Jur. 2d *Libel and Slander* § 276, at 547). In order for the privilege to apply, the following elements must exist: "'(1) the statement was made in good faith; (2) the defendant had an interest to uphold; (3) the scope of the statement was limited to the identified interest; and (4) the statement was published on a proper occasion,

---

[17] *See* Graves' Statement of Additional Facts Precluding Summary Judgment (docket number 27-3) at ¶¶ 10, 12, 18, 20-21, 24-25.

in a proper manner, and to proper parties only.'" *Barreca*, 683 N.W.2d at 118 (quotation omitted). "The privilege may be lost, however, if the speaker acts with actual malice, or exceeds or abuses the privilege[.]" *Theisen*, 636 N.W.2d at 84 (citations omitted). In *Barreca*, the Iowa Supreme Court defined "actual malice" as the publishing of a statement "with knowing or reckless disregard of its truth." 683 N.W.2d at 123.

LaFond argues that he is "entitled to summary judgment because any statement he made was in his official capacity as city administrator and is protected by the 'qualified privilege' for making defamatory statements."[18] LaFond cites *Barreca* as authority supporting his claim to the qualified privilege. *See Barreca*, 683 N.W.2d at 118 ("Surveying our precedents, we find that members of subordinate legislative bodies, including city councils, are entitle to a qualified privilege for statements made in the performance of their official duties 'upon any subject matter pertinent and relevant' to the occasion."). Assuming LaFond is entitled to the qualified privilege, the Court finds that the fabrications alleged by Graves raise material issues of fact as to whether LaFond acted with actual malice, that is "with knowing or reckless disregard of its truth," when he made the alleged statements and publications. *See Id.* at 123. Accordingly, LaFond's motion for summary judgment on Graves' libel and slander claims should be denied.

## VI. CONCLUSION

The Court concludes that Defendant City of Durant is entitled to summary judgment on Graves' sexual harassment/hostile work environment and retaliation claims. The Court further concludes, however, that the City is not entitled to summary judgment on Graves' sex discrimination claim. The Court also determines that Defendant Greg LaFond is entitled to summary judgment on Graves' intentional infliction of emotional distress claim, but is not entitled to summary judgment on Graves' aiding and abetting, libel, or slander claims.

_____

[18] *See* LaFond's Brief in Support of Motion for Summary Judgment (docket number 28-1) at 18-19.

*VII.  ORDER*

**IT IS THEREFORE ORDERED AS FOLLOWS**:

1.     The Motion for Summary Judgment (docket number 19) filed by Defendant City of Durant is hereby **GRANTED** in part and **DENIED** in part.  The City is entitled to summary judgment on Graves' sexual harassment/hostile work environment and retaliation claims.  The City is not entitled to summary judgment on Graves' sex discrimination claim.

2.     The Motion for Summary Judgment (docket number 28) filed by Defendant Greg LaFond is hereby **GRANTED** in part and **DENIED** in part.  LaFond is entitled to summary judgment on Graves' intentional infliction of emotional distress claim.  LaFond is not entitled to summary judgment on Graves' aiding and abetting, libel, and slander claims.

DATED this 5th day of March, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA